## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA SAVANNAH DIVISION

| | |
|---|---|
| **JEFFREY CROSLEN** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action File No.: _____** |
| **v.** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **CITY OF SAVANNAH,** | ) |
| **GEORGIA, and CHIEF ELZIE** | ) |
| **KITCHEN, in his Individual** | ) |
| **Capacity,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiff **Jeffrey Croslen** ("Croslen" or "Plaintiff") brings this civil rights action for relief and damages against Defendant **City of Savannah, Georgia** ("Savannah") and **Chief Elzie Kitchen, in his Individual Capacity** ("Chief Kitchen") (collectively "Defendants") based on the following factual allegations and causes of action.

1

## NATURE OF THE ACTION

1.     This action to correct unlawful employment practices by Savannah, a Georgia municipality, and its Fire Chief arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. § 2000e-3(a) and 42 U.S.C.A. §§ 1981 and 1983.

2.     The Savannah Fire Department ("SFD") has a long and entrenched history of passing over qualified African-American officers for top-level leadership positions. Even though the politically appointed Fire Chief has been black for most of the last two decades, the enduring pattern has been that white men hold virtually every other senior role at SFD. As of the filing of this Complaint, 17 of the 19 upper management positions are held by White men.

3.     Plaintiff Croslen is the rare Black officer who has broken through the glass ceiling, making it to Battalion Chief on his fifth application to the job in 2020. When he sought to advance to one of SFD's two Assistant Chief slots, despite qualifications and credentials superior to the other contenders, he was denied, in part because of racial quota politics: one Assistant Chief slot was reserved for a Black, the other for a White.

4.     When Croslen made internal complaints about race driving the Assistant Chief's promotion process, Chief Kitchen moved to orchestrate Croslen's

dismissal and, when that effort failed, his eventual demotion, all in violation of the anti-retaliation provisions of the federal race discrimination statutes.

5.     To address the discriminatory and retaliatory practices of the Defendants, Croslen seeks economic damages of back pay, front pay, and lost benefits. Additionally, Croslen seeks compensatory damages for emotional distress and mental anguish, as well as his attorneys' fees and costs of litigation. Croslen further petitions the court for injunctive and declaratory relief as appropriate, including his reinstatement to the position of Battalion Chief from which he was illegally ousted.

## THE PARTIES

6.     Plaintiff Croslen is a resident of Savannah, and remains employed by SFD as a Captain.

7.     Chief Kitchen is a resident of Savannah, and has been employed since 2022 as the Chief of SFD. Kitchen is subject to suit under §§ 1981 and 1983 for certain acts undertaken under color of state law while he was within the scope of his discretionary authority as Chief of SFD.

8.     Savannah is a municipal entity created by the laws of the state of Georgia, and it is an entity subject to suit under Title VII and §§ 1981 and 1983.

3

## PERSONAL JURISDICTION

9.      Savannah and Chief Kitchen may be served with process at the City Hall address at 2 E. Bay St., Savannah, Georgia 31401.

## SUBJECT-MATTER JURISDICTION AND VENUE

10.     Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

11.     Venue is proper in this district and division under 28 U.S.C.A. §1391(b)(1)-(2), as Defendants reside in and conduct business in this district and division and the acts or omissions giving rise to the claim occurred in the same venue.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     Croslen filed a charge of race discrimination and retaliation against Savannah with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 415-2024-01068, on March 13, 2024. A copy is attached as Exhibit A.

13.     Croslen subsequently received a right-to-sue letter from the EEOC on May 22, 2024. A copy is attached as Exhibit B.

## FACTUAL ALLEGATIONS

### Croslen's prior discrimination allegations

14.     In 1995, after 10 years with SFD, Croslen was promoted to the position of Captain. Despite an exemplary record of performance, his career stalled over the next two decades.

15.     Four times, Croslen was denied promotions to Battalion Chief, a senior management role that is the next rank above Captain (2006, 2007, 2011, 2013), and to the position of Training Captain, a job that is considered a stepping stone.

16.     In 2012 and 2013, Croslen filed charges of discrimination with the EEOC, alleging that SFD disproportionately promoted to senior-level management positions White candidates with less experience and fewer qualifications than African American candidates

17.     Croslen's case proceeded at a slow pace. The EEOC's investigation lasted over two years, and after Croslen filed a federal lawsuit in 2014, the discovery process dragged on for over 15 months. There were repeated briefing extensions, further delaying the district court's consideration of dispositive motions.

18.     A number of Croslen's claims survived the initial ruling in the fall of 2016, but the district court directed another round of briefing to address the implications of other lawsuits challenging promotional practices within SFD. In

early 2017, Croslen's case was administratively stayed pending a resolution of an appellate decision regarding another SFD lawsuit.

19.     In the fall of 2017, Croslen's case was reopened and the parties resumed the summary judgment process. While briefing concluded in early 2018, the case remained under review for another year and a half until it was reassigned to a Magistrate Judge in the fall of 2019.

20.     From 2019 to the fall of 2023, Croslen's case remained under submission with no judicial action, a remarkably long delay. In the interval, Croslen's attorney died in 2021.

21.     While the judicial process remained frozen, Croslen finally secured promotion to the upper management rank of Battalion Chief in early 2020. The Fire Chief who promoted him, Derik Minard, was a Coloradan who served for only three years at SFD and played no role in Croslen's history of thwarted promotions. Chief Minard told Croslen that given his abilities and credentials, he should have long ago been promoted to senior leadership.

22.     When Croslen was promoted to Battalion Chief, he was one of 2 Blacks out of 12 officers serving in that role. Both were promoted in 2020 by Chief Minard. In addition, four other senior level positions are considered parallel in status to Battalion Chief: Special Operations Chief, Chief Medical Officer,

Training Chief, and Emergency Manager Director. Between 2012 and now, with a two year exception in the past decade, these four roles have been held exclusively by Whites.  There is also a white Deputy Chief, a position created in 2023 and filled without following the standard posting and advertisement protocol.

### **Croslen's unsuccessful application for Assistant Fire Chief**

23.     Croslen's stint as Battalion Chief was successful. He received strong evaluations and a number of verbal commendations from upper management at SFD.

24.     In late 2022, Croslen applied for two open slots for the position of Assistant Fire Chief. Croslen was passed over for both positions in February 2023.

25.     During the promotional process for Assistant Fire Chief, Croslen was the most accomplished candidate in terms of longevity with SFD, and had been a ranking officer for 13 years longer than one candidate and 19 years longer than the other.

26.     Croslen had accumulated several career milestones that the selected candidates lacked. During the selection process, he earned the prestigious designation of Chief Fire Officer, as awarded by the national Center for Public Safety Excellence, and the distinction of Fire Officer 4, the Georgia Public Safety Training Center's highest ranking certification.

27.     Croslen outstripped the qualifications of both selectees, Jack McCutcheon, who is white, and Steven Frazier, who is Black. While SFD defended the process as race neutral, based partly on Frazier's elevation, the realities of the selection process were in fact tainted with racial considerations.

28.     Croslen heard from at least one other high ranking officer that Chief Elzie Kitchen, who had ascended to the position of Fire Chief in November 2022, had decided to treat one Assistant Chief opening as a "Black slot" and the other as a "White slot": in other words, a racial quota.

29.     Under this quota, instead of selecting the most meritorious candidate for each slot, Chief Kitchen's plan was to pit Blacks against Blacks, and Whites against Whites, without an opportunity for a candidate to compete for an opportunity outside the opening reserved for their race.

30.     While SFD employs internal review boards to recommend and interview candidates for upper level management, Chief Kitchen sits on the board and it is routine practice that SFD Chiefs advocate for candidates openly and behind the scenes. The selection process is insulated from review from any citywide personnel board. A quota policy for SFD is not obligated by any judicial consent decree, and it is anathema to well-established federal judicial precedent in this circuit and at the Supreme Court level.

31.     Whether or not it provides political value to Chief Kitchen, and even if it serves an abstract goal of promoting diversity, quota promotions disadvantage qualified candidates like Croslen because it limits their ambitions to slots set aside for their race.

### Croslen's opposition to the selection process for Assistant Chief

32.     On March 17, 2023, Croslen sent an email to Chief Kitchen and Deputy Chief William Handy alluding to a history of race discrimination within the department, Croslen's own role in litigating against discrimination, and his plan to open a dialogue "with the city manager, human resources, and other agencies. My intent is to make a positive impact within the City." Croslen's language alludes to a potential challenge to aspects of SFD's promotional system.

33.     Within approximately 10 days of his email, Croslen was notified by the internal affairs department ("IAD") that he was under investigation for violating Section 21.14 of SFD's standard operating procedures, which directs that officers "shall not adversely criticize [SFD's] policies or the official activities of other employees in the presence of subordinates."

34.     Croslen was told by IAD that there were reports that Croslen stated in the presence of officers under his command that the Assistant Fire Chief position "had been stolen" from him. Croslen made no such remark.

35.     During the course of the IAD inquiry, Croslen was interviewed by investigators. During the interview, he voiced criticism of an apparent use of a racial quota to select the Assistant Fire Chiefs.

36.     On June 19, 2023, Croslen sent Kitchen a letter by email denying that he violated SFD's policies but reiterating concerns about the promotional process and the allotment of seats to candidates based on race.

37.     On June 26, 2023, Croslen was informed that the internal affairs investigation had determined there was no specific violation of department policy, but in a memo from Chief Kitchen that same day, he was directed to begin counseling with SFD's employee assistance program ("EAP") and informed that if EAP recommended further psychological counseling, he would be mandated to receive therapy or risk termination.

38.     EAP is a valuable tool for troubled employees, but Chief Kitchen's order of mandatory participation is inconsistent with SFD policies, which envision voluntary EAP referrals for firefighters who have experienced trauma on the job or who have exhibited signs of distress at work.

39.     EAP is not designed to punish dissenters to internal personnel policies.

**Croslen's suspension and eventual demotion**

40.     On August 1, 2023, Chief Kitchen convened a forum for operational leaders within SFD to discuss programmatic issues within the organization. Kitchen advised the attendants that they were authorized to speak freely without repercussions.

41.     During the forum, Croslen expressed that SFD had a tendency to stifle dissent. Kitchen became visibly agitated and loudly admonished Croslen that "a personal attack on my leadership" would not be tolerated.

42.     On August 4, Chief Kitchen ordered Croslen to resign or face termination for "insubordination." When Kitchen refused, he was suspended pending a review of his termination.

43.     Not until October 6, 2023 did City Manager Joseph Melder, who is the final decision-maker regarding challenged municipal terminations, conduct a meeting in his office to hear Croslen's argument to reverse Kitchen's recommendation.

44.     After the October 6 meeting, Croslen's dormant federal case started to become active again. The case was transferred to another district judge, who appointed counsel for Croslen and set a hearing on the long-pending summary judgment motion for late November.

45.     Prior to the hearing, Croslen decided that he did not wish to pursue his federal civil case and that he would instead devote his energy to saving his job. Pursuant to being notified of Croslen's change of heart, the district judge issued an order on November 28, 2023, dismissing Croslen's case.

46.     The very next day, Savannah's Assistant Human Resources Director notified Croslen that he could resign or accept a demotion to Captain.

47.     Croslen would not resign, and effective December 3, 2023, Croslen was demoted to the level of Captain and his pay was reduced by $11,215.22.

48.     To Croslen's knowledge, no other Battalion Chief has been involuntarily demoted. He is aware of one instance in which a Battalion Chief disseminated confidential medical information regarding the mental health of a firefighter's late wife but faced no disciplinary consequences.

49.     Croslen was denied an opportunity to ascend to an Assistant Fire Chief role because one of the positions for which he applied was not a "Black" slot.

50.     Then, Croslen lost his job as Battalion Chief because he engaged in protected activity opposing the injection of race into SFD's promotional processes. Prior to his demotion, he was subjected to other retaliatory measures, including

what amounted to a four-month suspension, an involuntary assignment of EAP counseling, and Chief Kitchen's effort to terminate him altogether.

## CAUSES OF ACTION

### COUNT I
**(Against City of Savannah)**
**(Retaliatory demotion in violation of Title VII, 42 U.S.C.A. § 2000e-3(a))**

51.    Plaintiff incorporates by reference paragraphs 1-50 of this complaint as though set forth fully and separately herein.

52.    Plaintiff engaged in protected activity under Title VII in that he opposed racially discriminatory promotion practices within the Savannah Fire Department.

53.    But for Plaintiff's protected activity, he would not have been demoted in rank.

54.    As a result of the retaliatory conduct by the City of Savannah, Plaintiff Croslen has suffered monetary damages, including but not limited to back pay and front pay; loss of future benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

### COUNT II
**(Against Elzie Kitchen, in his individual capacity)**

**(Retaliatory hostile environment in violation of 42 U.S.C.A. §§ 1981 and 1983)**

55.    Plaintiff incorporates by reference paragraphs 1-50 of this complaint as though set forth fully and separately herein.

56.    Plaintiff Croslen engaged in protected activity under Section 1981 in that he opposed racially discriminatory promotion practices within the Savannah Fire Department.

57.    Defendant Kitchen retaliated against Plaintiff Croslen for engaging in protected activity by subjecting him to conduct including but not limited to coerced participation in Savannah's EAP, a prolonged administrative suspension, and an attempt to terminate his employment.

58.    The cumulative retaliatory conduct by Chief Kitchen well might have dissuaded a reasonable person from engaging in protected activity, creating a retaliatory hostile environment.

59.    Defendant Kitchen's retaliatory conduct occurred while he was acting under color of state law and was within the scope of his discretionary authority as a municipal official, thereby subjecting him to liability under Section 1983.

60.     Defendant Kitchen's retaliatory conduct violated the clearly established right under Section 1981 to be free from retaliation for opposing racially discriminatory practices.

61.     As a result of Defendant Kitchen's retaliatory conduct, Plaintiff has suffered compensatory damages, including emotional distress, humiliation, embarrassment, and mental anguish.

62.     Because Defendant Kitchen's actions in his individual capacity demonstrate malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages.

## COUNT III

**(against City of Savannah)**

**(discriminatory failure to promote in violation of 42 U.S.C.A. §§ 1981 and 1983)**

63.     Plaintiff incorporates by reference paragraphs 1-50 of this complaint as though set forth fully and separately herein.

64.     Defendant Chief Kitchens engaged in racially discriminatory conduct by treating race as a determinative factor in the evaluation of candidates for the role of Assistant Fire Chief that Plaintiff sought in 2022-23.

65.     Defendant City of Savannah is liable under Section 1981 and 1983 for Chief Kitchen's discriminatory actions because he had final policy-making authority for the process of selecting SFD's Assistant Fire Chief, and Savannah exercised no meaningful administrative review over that process.

66.     As a result of Savannah's discriminatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay and front pay; loss of future benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## PRAYER FOR RELIEF

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A.  Back pay, front pay, and lost benefits.

B.  Compensatory damages to the extent allowed by law.

C.  Punitive damages against Chief Kitchen in his individual capacity.

D.  Attorneys' fees and costs of litigation.

E.  Pre-judgment and post-judgment interest at the highest lawful rate.

F.  Such other equitable and monetary relief as the court deems just and proper, including reinstatement to the position of Battalion Chief.

G.  A declaratory judgment that Defendant's actions violated Plaintiff's statutory and constitutional rights and that Defendant shall refrain

from future unlawful discriminatory conduct in its employment practices.

Respectfully submitted the 10th day of July, 2024.

**HKM Employment Attorneys LLP**

*s/Artur Davis*[1]
Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

*s/ Sheri Bagheri*
Shahrzad "Sheri" Bagheri
Bar No. 174460
3344 Peachtree Rd. NE, Suite 800
Office #35
Atlanta, GA 30326
Direct: 404-618-3966
sbagheri@hkm.com
Jerilyn Gardner[2]
Georgia Bar No. 139779
3344 Peachtree Rd. NE, Suite 800
Office #35
Atlanta, GA 30326
Direct: 404-446-9544
jgardner@hkm.com

**Counsels for Plaintiff Jeffrey Croslen**

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.

[2] Jerilyn Gardner will promptly file for admission *pro hac vice* as an attorney of record in this action. Ms. Gardner is licensed in the state of Georgia.